UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| BARBARA KOLEDA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No.  23 C 15064 |
| ) | |
| UR M. JADDOU, Director, U.S. ) | Judge Rebecca R. Pallmeyer |
| CITIZENSHIP AND IMMIGRATION ) | |
| SERVICES, *et al.*, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

On May 5, 2021, Barbara Koleda, a Polish citizen, applied for adjustment of her immigration status to lawful permanent residency. When that application sat for two years without action, she filed a mandamus petition [1] under the Administrative Procedure Act ("APA"), alleging unreasonable delay on the part of the United States Customs and Immigration Service ("USCIS"). She named as Defendants Ur Jaddou and Alejandro Mayorkas—respectively, the director of USCIS and the Secretary of the Department of Homeland Security. (Am. Petition for Writ of Mandamus (hereinafter "Pl.'s Petition") [11] at 5.) Two months after she filed that motion, USCIS denied her application and moved to dismiss her claim as moot [7]. In a supplemental motion [11], Koleda asks the court for a writ of mandamus ordering the Secretary of the Department of Homeland Security ("DHS") to initiate the removal process, thus enabling her to renew her adjustment application as a defense in those proceedings. The Defendants have moved to dismiss a second time [13], and, for the reasons stated below, the court strikes their prior motion as moot and grants their second motion.

## STANDARD OF REVIEW IN ADMINISTRATIVE PROCEEDINGS

Noncitizens may seek adjustment to lawful permanent resident ("LPR") status—and thus remain in the country—by applying to the Secretary of Homeland Security for an immigrant visa. *See* 8 U.S.C. §§ 1151–54. One step toward that end is a Form I-130 petition, also called a Petition

for Alien Relative, filed by a U.S. citizen seeking lawful permanent residency status on behalf of a relative. *Id.* § 1151(b)(2)(A)(i); 8 C.F.R. § 204.1(a)(1). With the I-130 approved, the noncitizen may file a Form I-485 petition for adjustment of status to that of a permanent resident. 8 U.S.C. § 1255(a). And if USCIS accepts a noncitizen's I-485 application, the noncitizen may lawfully remain in the United States. 8 C.F.R. § 245.2(a)(5)(ii). If the application is denied, the noncitizen is subject to removal, but "retains the right to renew his or her application" in removal proceedings. *Id.*

## BACKGROUND

Babara Koleda is a Polish citizen who seeks permanent residency in the United States. (Petition for Writ of Mandamus [1] at 4). At some point prior to the events at issue in this case, her husband filed an I-130 Petition on her behalf, which was ultimately approved. (*Id.* at 4.) Subsequently, on May 5, 2021, Koleda filed an I-485 application. (*Id.*) A year later, USCIS interviewed Koleda and her husband as part of its assessment of that application, but a few weeks after that it issued her a Notice of Intent to Deny ("NOID").[1] (*Id.*) Koleda filed a response to that NOID on July 12, 2022. (*Id.*)

Then, for over a year, Koleda's I-485 application remained in USCIS' hands without official word, despite her repeated inquiries concerning the application's status. (*Id.*) Evidently frustrated by the delay, Koleda filed her mandamus petition in this court on October 17, 2023. She asserted in her complaint that 5 U.S.C. § 555(b), part of the APA, required USCIS to approve or deny her application within a reasonable amount of time. (*See id.*) Her complaint noted the hardship Ms. Kolenka suffered in her wait for an answer as to whether she could remain in the United States, particularly due to her husband's recent diagnosis of Parkinson's disease. (*See id.* at 5–6.) Then,

---

[1] USCIS issues a NOID when an application appears insufficient but additional evidence could demonstrate an applicant's eligibility for the relevant benefit. *See* 8 C.F.R. § 103.2(b)(8). The NOID typically informs the applicant of what evidence could change the calculus. 8 C.F.R. § 103.2(b)(8)(iv). The record before this court does not indicate what Koleda's application lacked, or how (if at all) she supplemented her application in the response she subsequently filed.

in December, and while her complaint was pending in this court, USCIS notified Koleda that her application had been denied. (*See* Ex. 1 to Defs.' First Mot. to Dismiss [7-1].) Defendants moved to dismiss her complaint, arguing that their denial of her I-485 application mooted the claim. (*See* Defs.' First Mot. to Dismiss [7].)

The parties filed a joint status report on December 28, 2023. In that report, Koleda stated that she planned to file an amended complaint in this mandamus action pursuant to Federal Rule of Civil Procedure 15(a)(1)(B). (Joint Status Rep. [8] at 1.) Koleda also offered "to dismiss the case if . . . [USCIS] issued a Notice to Appear[2] to have her case reviewed by the Immigration Court." (*Id.* at 2.) For their part, Defendants asserted that "this case is over" and that mandamus was inappropriate because the court lacked jurisdiction to order USCIS to institute deportation proceedings. (*Id.*) Declining to address the jurisdictional question before seeing the specific claims that Koleda would raise, the court directed her to file her proposed amended complaint. (Minute Entry [10].)

Koleda did so on January 10, 2024. In her "Amended Petition for Writ of Mandamus," Koleda asked the court to direct USCIS "to place the Plaintiff in removal proceedings . . . so that she may renew her denied application for adjustment of status . . . ." (Am. Petition for Writ of Mandamus [11] at 1.) In response, Defendants filed a second motion to dismiss, at issue here, which argues that the court lacks subject matter jurisdiction and that, alternatively, Plaintiff has failed to state a claim. (Mot. to Dismiss [13].)

## **DISCUSSION**

The standards for a motion to dismiss are familiar. A court must dismiss a case if it lacks jurisdiction over its claims. FED. R. CIV. P. 12(b)(1). The same is true if the complaint fails to state a claim. FED. R. CIV. P. 12(b)(6). The court takes as true all factual allegations in Plaintiff's

---

[2] A Notice to Appear is a written notice provided to a noncitizen as part of the commencement of removal proceedings, informing them of the nature of the proceedings, the claims against them, the location and time of the removal proceedings, and the like. *See* 8 U.S.C. § 1229(a).

3

complaint when determining both issues—that is, when deciding whether subject matter jurisdiction exists over her claim and whether she has stated a claim upon which relief can be granted. *See Retired Chicago Police Ass'n v. City of Chicago*, 76 F.3d 856, 862 (7th Cir. 1996); *Hardimon v. Am. River Transportation Co., LLC*, 95 F.4th 1130, 1133 (7th Cir. 2024).

In their second motion to dismiss,[3] Defendants argue that 8 U.S.C. § 1252(g) strips this court of jurisdiction over claims concerning the initiation of removal proceedings. The court agrees. Federal district courts' jurisdiction over the commencement of removal proceedings is strictly circumscribed by statute:

> Except as provided in this section and notwithstanding any other provision of law (statutory or nonstatutory), including section 2241 of title 28, or any other habeas corpus provision, and sections 1361 and 1651 of such title, no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter.

8 U.S.C. § 1252(g). In addition to the affirmative decision "to commence proceedings," *id.*, the Seventh Circuit has read § 1252(g)'s jurisdictional bar to "preclude[] judicial review of the Attorney General's decision *not* to commence removal proceedings." *Chapinski v. Ziglar*, 278 F.3d 718, 721 (7th Cir. 2002) (emphasis added).

The explicit language of the statute bars this court from granting the relief Koleda seeks. As the Supreme Court has made clear, "Section 1252(g) was directed against a particular evil: attempts to impose judicial constraints upon prosecutorial discretion" regarding removal decisions. *Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 485 n.9 (1999). Indeed,

---

[3] Both Koleda's first complaint and Defendants' first motion to dismiss are mooted by their more recent filings, as the relief Koleda sought in her first complaint (adjudication of her pending I-485 petition) has already been granted. Then, as Defendants point out, Koleda's amended complaint is really a supplemental complaint (or a new complaint altogether), given that it seeks different relief from the court on subsequent factual developments. *See* FED. R. CIV. P. 15(d). Because the court concludes it lacks jurisdiction over Plaintiff's amended complaint—and that a new lawsuit, were Koleda to file one, would likely be assigned to this court, see LR 40.4(b)—the court addresses the amended complaint and denies Defendants' first motion to dismiss as moot.

"[a] principal feature of the removal system is the broad discretion exercised by immigration officials." *Arizona v. United States*, 567 U.S. 387, 396 (2012). The discretion extends to federal officials' decisions of "whether it makes sense to pursue removal at all." *Id.* Put differently, "Congress has afforded the Attorney General (or other executive officials) discretion to allow otherwise removable aliens to remain in the country." *Niz-Chavez v. Garland*, 141 S. Ct. 1474, 1478, (2021). The decision is thus not this court's to make; directing federal officials to institute removal proceeding runs headfirst into a clear jurisdictional bar. Nor does Plaintiff's request for mandamus allow the court to circumvent the jurisdictional problem: § 1252(g) explicitly directs the court to refrain from intervening "notwithstanding . . . [28 U.S.C. §] 1361," the Mandamus Act.

The Seventh Circuit has addressed the question presented here and reached the same conclusion. *Chapinski v. Ziglar* concerned noncitizens from Soviet bloc countries who sought LPR status. 278 F.3d at 720. The appellants' eligibility for adjustment of status depended on their spouses, who had been granted suspension of deportation under the Nicaraguan Adjustment and Central American Relief Act of 1997 (NACARA). *Id.* Under the then-applicable regulatory regime, only the Immigration Court—in removal proceedings—could adjudicate the appellants' LPR eligibility. *Id.* The district court denied their request for an order of mandamus compelling the agency to adjudicate their applications for lack of jurisdiction under § 1252(g). *Id.* Appellants argued on appeal that this left them in "'no man's land' until the . . . Immigration Court decides to act," but the Seventh Circuit was unmoved. Affirming the district court's dismissal order, the Court of Appeals confirmed that § 1252(g) precluded jurisdiction because appellants' "request . . . necessarily compels the Attorney General to commence proceedings in order to consider their applications." *Id.* at 721. The same problem exists here: Plaintiff asks this court to intervene in the decision to commence removal proceedings to tee up her adjustment application, but the court is barred by statute from doing so.

Plaintiff urges that the mandamus relief she requests in this case is nonetheless appropriate. First, she points out that the Mandamus Act gives "district courts . . . original

5

jurisdiction of any action . . . to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." 28 U.S.C. § 1361. She characterizes the institution of removal proceedings as a duty "owed" to her by the government. In support she points to some mandatory language in the statutes and regulations concerning removal proceedings and argues that they impose on USCIS "a mandatory duty to adjudicate adjustment of status applications and place someone in removal proceedings if they are denied . . . ." (Resp. to Mot. to Dismiss (hereinafter "Pl.'s Resp.") [16] at 3–4 (citing 8 U.S.C. § 1103 (noting that the Attorney General "shall be charged with the administration and enforcement of . . . all . . . laws relating to the immigration and naturalization of aliens"); 8 C.F.R. § 245.6 (noting that immigration officers "shall" interview "[e]ach" applicant for adjustment of status); 8 C.F.R. § 245.2 (requiring officers to notify an applicant of their decision to approve or deny).) The court will assume these statutes and regulations do impose a duty on USCIS to adjudicate pending applications, but they say nothing similar about the separate decision of whether to initiate removal proceedings—a decision in which this court can have no involvement, as provided by § 1252(g). *See Sharif ex rel. Sharif v. Ashcroft*, 280 F.3d 786, 787–88 (7th Cir. 2002) ("[A] district court lacks jurisdiction to compel the Attorney General to initiate or resolve proceedings that would lead to relief from removal.")

Plaintiff's discussion of case law does not bolster her position on the court's mandamus jurisdiction. *Iddir v. I.N.S.*, 301 F.3d 492, 500 (7th Cir. 2002) concerned the failure of the Immigration and Naturalization Service (INS) to adjudicate applications for adjustment of status under the Diversity Visa Lottery Program within the one-year timeframe contemplated by that program. Under the program, lottery winners were given one year during which they could petition for adjustment of status. *Id.* at 494 (citing 8 U.S.C. § 1151(a)(3); 1151(c)(1); 1154(a)(1)(I)(ii)). INS failed to adjudicate the plaintiffs' applications within that year, so their visas expired and it became impossible to grant their petitions. *Id.* at 494–95. The Seventh Circuit affirmed dismissal of the plaintiffs' cases on mootness grounds but noted that, given the "directive language" in the relevant statute, the applicants had "ha[d] a right to have their cases adjudicated" beforehand. *Id.*

6

at 500–01. The statutory scheme at issue in that case, however, was wholly different than that at issue here. There, the program required the government to act in a certain time period (one year); here, the government has already denied the application, so no further requirement to act exists, let alone under a deadline.

Plaintiff also acknowledges *Chapinski v. Ziglar*, but argues that it is distinguishable. *Chapinski* held that § 1252(g) bars judicial review of the decision to commence removal proceedings, but Plaintiff urges that "in that case the applicant was attempting to file an application which is only available as a defensive application in proceedings." (Pl.'s Resp. at 4 (citing *Chapinski*, 278 F.3d at 720).) As the court understands her position, Plaintiff contends that, unlike the appellants in *Chapinski* (whose only opportunity to have their status determined was during removal proceedings), Plaintiff's case involved *two* potential adjudications of her I-485 application: the first (which was denied), and a second (which she could raise in response to removal proceedings). But this is a distinction without a difference. Just as in *Chapinski*, the only way for the court to grant Plaintiff relief would be to compel federal officials to commence removal, as Koleda *also* plans to—and indeed must—renew her application for adjustment of status as a defense in such proceedings. *See* 8 C.F.R. § 245.2(a)(5)(ii) (noting that though "[n]o appeal lies from the denial" of an I-485 application, "the applicant . . . retains the right to renew his or her application in proceedings under 8 CFR part 240 [removal proceedings]"). And though she maintains the right to renew this application should removal proceedings be brought against her, the regulations do not give her a right to demand that those proceedings be brought. Indeed, it would be strange to conclude that someone applying to permanently reside in the United States is entitled, upon rejection of that application, to demand the government affirmatively pursue her ouster.[4]

---

[4] In a single sentence in her amended complaint, Plaintiff points out that *Chapinski* contemplated that courts could intervene, notwithstanding the jurisdictional bar, in circumstances that raised the prospect of a due process violation. *See* 278 F.3d at 721. But Plaintiff has not

7

In sum, Plaintiff has pointed to no caselaw or statutory language that contradicts § 1252(g)'s clear directive barring this court from reviewing federal officials' decisions concerning the commencement of removal proceedings. *See Acosta v. Mayorkas*, No. 22-CV-0048 KG/SCY, 2022 WL 1321521, at *1 (D.N.M. May 3, 2022) (in similar situation, finding § 1252(g) bars jurisdiction to order Immigrations and Customs Enforcement to begin removal proceedings). The court therefore lacks subject matter jurisdiction over Plaintiff's amended claim.[5]

## CONCLUSION

In granting the motion to dismiss, the court sympathizes with Plaintiff's frustration. She has endured months of waiting for a final resolution of her status, at a time when her husband's health circumstances pose a particular challenge. Our government should do better. But the court lacks jurisdiction to grant this petition. The motion to dismiss [13] is granted. The Clerk is directed to enter judgment in favor of Defendants.

ENTER:

Dated: April 18, 2024

_____
REBECCA R. PALLMEYER
United States District Judge

---

briefed or even identified any potential due process violation, in either her first or amended complaint.

[5] The court briefly notes that, notwithstanding § 1252(g)'s jurisdictional bar, the complaint also fails to state a claim for unreasonable delay under the APA. Plaintiff points to the APA's requirement that "[w]ith due regard for the convenience and necessity of the parties . . . and within a reasonable time, each agency shall proceed to conclude a matter presented to it." 5 U.S.C. § 555(b). The problem with her argument is that the APA does not apply where "statutes preclude judicial review" or where "agency action is committed to agency discretion by law." 5 U.S.C. § 701(a). And, as Defendants point out, both circumstances are present here. For one, as the court has discussed, § 1252(g) precludes judicial review. And because the decision to remove is discretionary, the court may not make that decision for USCIS. *See Heckler v. Chaney*, 470 U.S. 821, 832 (1985) (concluding that "an agency's decision not to take enforcement action should be presumed immune from judicial review under § 701(a)(2)").

8